885 F.2d 864
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Harold P. COSTON, Plaintiff-Appellee,
v.
Ruby HOOPER, individually, and in her capacity as Deputy
Secretary of the North Carolina Department of Human
Resources, Don Cummings, individually, and in his official
capacity as Director of Personnel of the North Carolina
Department of Human Resources, Defendant-Appellants,
and
James G. Martin, Governor of the State of North Carolina,
Phillip J. Kirk, individually, and in his official capacity
as Secretary of the North Carolina Department of Human
Resources, Bobbie Ragan, individually, and in her capacity
as Assistant Director of the Broughton Hospital, Defendants.
 No. 88-2946.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1989.
Decided Sept. 19, 1989.
 
 James Peeler Smith, Special Deputy Attorney General, John R. Corne, Assistant Attorney General (Lacy H. Thornburg, Attorney General on brief) for appellants.
 John A. Dusenbury, Jr. (Smith, Patterso, Follin, Curtis, James & Harkavy on brief) for appellee.
 Before CHAPMAN, Circuit Judge, GEORGE ROSS ANDERSON, JR., United States District Judge for the District of South Carolina, and EUGENE A. GORDON, Senior United States District Judge for the Middle District of North Carolina, Sitting by Designation.
 CHAPMAN, Circuit Judge:
 
 
 1
 Plaintiff/appellee Harold P. Coston, former Director of Broughton Hospital (hereinafter "Hospital") in Morganton, North Carolina initiated this action, pursuant to 42 U.S.C. Secs. 1983 and 1985, against defendants/appellants alleging that he was forced to resign his position, in violation of his rights under the First and Fourteenth Amendments, because he refused to terminate Hospital employees due to their political affiliations. The defendants named in the complaint were James G. Martin, Governor of North Carolina; Phillip J. Kirk, Jr., former Secretary of the North Carolina Department of Human Resources; Ruby T. Hooper, Deputy Secretary of the Department of Human Resources; Don Cummings, Personnel Director of the Department of Human Resources; and Bobbie R. Ragan, Business Manager of the Hospital. Each defendant was sued in his or her individual and official capacities.
 
 
 2
 The district court dismissed all claims against defendants Martin and Kirk and granted all defendants partial summary judgment on the conspiracy claim under Sec. 1985. A jury verdict and $60,000 award for compensatory damages was rendered in favor of the plaintiff against defendants Hooper and Cummings. The district court denied defendants' motions for directed verdict and for judgment notwithstanding the verdict. For the reasons that follow, we affirm the district court with respect to all issues raised by defendants.
 
 I.
 
 3
 Harold Coston was installed as Director of Broughton Hospital on April 22, 1985. He had 34 years of experience as a hospital administrator. The Hospital, by all accounts, had a long history characterized by partisan political activity among administrators and staff members. Some members of the staff had been appointed because of party affiliation and loyalties.
 
 
 4
 According to Coston, in a private meeting following his installation, defendant Hooper, in the presence of Ragan and John Gale (the Hospital's Personnel Director), told Coston that a number of Hospital employees had to be dismissed, demoted or reassigned because they were either active or influential in Democratic Party politics or had received their jobs because they had a relative who was prominent in the Party. The defendants deny that Coston was given a list of people to be terminated or reassigned. It is conceded, however, that at least four people were mentioned who were the subject of complaints received by Hooper. These individuals were allegedly unprofessional in the conduct of their employment and had engaged in political activity on Hospital time.
 
 
 5
 Coston claims he investigated the named individuals and could find no reason to dismiss or reassign them; however, a few members of the staff were reassigned as a result of a general reorganization. Coston alleges that defendant Cummings, acting in concert with other defendants, frequently urged him to terminate certain employees or pressured him to grant patronage appointments to Hospital positions.
 
 
 6
 It is conceded by defendants that they shared a desire to place some Republicans in prominent positions at the Hospital, especially because Republican activists had been systematically excluded from positions at Broughton Hospital during past Democratic administrations. The defendants denied that they instructed Coston to fire any employee because of party affiliation. Hooper and Cummings admitted that they urged Coston to make some employment reassignments to improve efficiency at the Hospital. They acknowledged concern about the political intimidation of Hospital employees and the use of Hospital resources for political organizing by some Democratic Party activists on the staff. Defendants Hooper and Cummings also acknowledged that they were unhappy with Coston's performance as administrator and opined to fellow administrators that Coston should be dismissed for his failure to deal promptly with personnel matters.
 
 
 7
 It is undisputed that severe problems at the Hospital involving the physical plant, safety features, staff shortages and poor employee morale threatened the institution's accreditation status and jeopardized continued receipt of Medicare funds. The defendants contended that Coston was not sufficiently aggressive in tackling these and related problems.
 
 
 8
 On May 9, 1986 Coston was finally forced to resign by Dr. Paul Kayye, Director of the Division of Mental Health, Mental Retardation and Substance Abuse Services of the Department of Human Resources. Dr. Kayye asked for Coston's resignation, with Secretary Kirk's consent, because he thought Coston was requiring too much direction from the central office in Raleigh, was not aggressive in solving the Hospital's accreditation problems, and lacked control over the staff. The "straw that broke the camel's back," according to Kayye, was the revelation that Coston had used the state telephone system to make numerous personal long distance calls and had abused an administrative compensatory time program. Coston claimed that Kayye acknowledged that "politics" was a factor in the decision to terminate him. Kayye did not recall using the word; but if he did, he argues that it was meant in reference to interrelationships among people within the Hospital and not in a partisan sense.
 
 
 9
 Coston contends that the defendants, acting under color of state law, denied him his constitutional freedom of association and equal protection in violation of 42 U.S.C. Sec. 1983 because he refused to terminate employees on the basis of their party affiliation. Coston further alleged that the defendants, acting in concert, conspired to deprive him of his civil rights in violation of 42 U.S.C. Sec. 1985.
 
 
 10
 Following discovery, the defendants submitted motions for summary judgment. The district court dismissed all claims as to Secretary Kirk and Governor Martin and granted all defendants partial summary judgment on the conspiracy claim under Sec. 1985. However, motions for summary judgment on the Sec. 1983 claims were denied. A jury trial was conducted in July 1988. The jury found that defendants Hooper and Cummings had violated Coston's constitutional rights and awarded him $60,000 in compensatory damages. The defendants moved for judgment notwithstanding the verdict (JNOV) under Federal Rule of Civil Procedure 50(b). The trial court denied the motion for JNOV. Defendants Hooper and Cummings timely filed a notice of appeal to this Court.
 
 II.
 
 11
 Defendants first argue that the district court erred in denying their motions for directed verdict and JNOV. Defendants maintain that the evidence, even viewed in the light most favorable to sustaining the jury's verdict and affording the plaintiff the benefit of all reasonable inferences, was insufficient to support a finding that either defendant caused Coston to lose his job. We disagree.
 
 
 12
 Plaintiff's cause of action rests on the ground that a state employee in a nonpolicymaking position may not be discharged solely on the grounds of his political affiliations. Elrod v. Burns, 427 U.S. 347, 372-73 (1976). Such dismissals, the Supreme Court reasoned, "severely restrict political belief and association." Id. at 372. It has, however, been held that patronage dismissals are not constitutionally proscribed where "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti v. Finkel, 445 U.S. 507, 518 (1980). Moreover, there may only be limited First Amendment interests involved in a case where a public employee is terminated for expression which is not of a public concern. Connick v. Myers, 461 U.S. 138 (1983).[1]
 
 
 13
 A plaintiff who claims he was discharged in violation of the First and Fourteenth Amendments must show that his removal was caused by partisan animus or political activity. See Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274 (1977). In Mt. Healthy, the Court adopted a test for determining whether an employee's discharge was causally related to his or her political activity. The Court counseled that a plaintiff must show his constitutionally protected activity was a "substantial" or "motivating" factor behind the decision to terminate. Id. at 287. See also Conklin v. Lovely, 834 F.2d 543, 546 (6th Cir.1987).
 
 
 14
 In the case sub judice, defendants argue that the evidence failed to establish that their acts were the cause-in-fact or proximate cause of Coston's discharge. In assessing the sufficiency of the evidence, our power of review is limited. We may not weigh the evidence, pass on the credibility of witnesses, or substitute our judgment of the facts for that of the jury. Tights, Inc. v. Acme-McCrary Corp., 541 F.2d 1047, 1055 (4th Cir.), cert. denied, 429 U.S. 980 (1976). Although we may not have interpreted the evidence as the jury did, we find there was sufficient evidence--both direct and circumstantial--to support the verdict.
 
 
 15
 In determining whether to grant a motion for directed verdict or JNOV, the trial court must view the evidence in the light most favorable to sustaining the jury's findings and must give the prevailing party the benefit of all reasonable inferences which may be drawn from the evidence. Tights, 541 F.2d at 1055-56. To sustain the jury's findings, inferences must be within the range of reasonable probability and not mere possibility. It is the duty of the court to "withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir.1982), quoting Ford Motor Company v. McDavid, 259 F.2d 261, 266 (4th Cir.1958). See also Ralston Purina Company v. Edmunds, 241 F.2d 164, 167-68 (4th Cir.), cert. denied, 353 U.S. 974 (1957).
 
 
 16
 A motion for JNOV, like one for directed verdict, should be granted if "reasonable minds could only come to a conclusion against the non-movant." Littlejohn v. Rose, 768 F.2d 765, 770 (6th Cir.1985), cert. denied, 475 U.S. 1045 (1986). In making this determination, "neither the credibility or weight of the evidence should be considered." Id. See also Lynch v. Universal Life Church, 775 F.2d 576, 580 (4th Cir.1985). In the present case, we hold that a reasonable jury could have found for the plaintiff. This holding is based on the evidence briefly noted below and presented at trial. Viewing this evidence in the light most favorable to the plaintiff, there was support for his theory that an unconstitutional political animus was the cause of his forced resignation.
 
 
 17
 It is uncontested that Dr. Kayye, after informing Secretary Kirk, made the decision to ask for Coston's resignation or to dismiss him. Defendants Hooper and Cummings assert that they neither influenced nor were they in a position to compel Kayye's decision. We find, however, evidence sufficient to support a reasonable inference that defendants' actions were substantial factors in bringing about Coston's dismissal.
 
 
 18
 Ruby Hooper, a Republican Party activist named Deputy Secretary of the Department of Human Resources by Governor Martin, was a 30-year employee of Broughton Hospital. She was familiar with the patronage system and political intrigue which had long colored employee relations and administrative conduct at the Hospital. She was outspoken in her campaign to eradicate what she perceived to be the partisan abuses of past Democratic administrations, and evidence in the record demonstrated a resolve by Hooper to intervene in personnel decisions at the Hospital. While Hooper maintains she did not learn of Coston's resignation until after it had been submitted, it was no secret she was unhappy with Coston's performance and thought he should be terminated. Testimony at trial revealed that Hooper, as did Cummings, conveyed this dissatisfaction to Secretary Kirk and other key members of the administration. Moreover, Hooper was Kayye's superior in the Department of Human Resources and carried sufficient political clout for a jury to conclude that her well-known sentiments influenced Kayye and others.
 
 
 19
 Don Cummings, like Hooper, candidly acknowledged a desire to implement a patronage system which would benefit Republicans, especially since he believed Republicans had been systematically excluded from such positions in the past. The jury also heard evidence that Cummings had intervened in various ways to encourage the dismissal or reassignment of employees identified as active Democrats. It is undisputed that Cummings recommended to Kayye the dismissal of Coston for his failure to deal aggressively with "personnel matters." In short, Cummings was agitated because Coston had not moved more quickly to rectify the imbalance caused by past Democratic patronage appointments at the Hospital. It was Cummings who brought to Kayye's attention the issues of Coston's alleged abuse of the state telephone service and compensatory time program, only after Kayye had informed Cummings that more evidence was needed to justify discharging Coston. Kayye believed that Cummings' motive for giving him this information was so that it could be used against Coston. It was this information, Kayye testified, which "broke the camel's back" and prompted him to remove Coston.
 
 
 20
 There was also evidence presented at trial from which a jury could reasonably conclude that the stated reasons for Coston's removal--abuse of telephone privileges and compensatory time--were pretextual. First, the circumstances under which these issues were presented to Kayye (following his statement that more evidence was needed to dismiss Coston) suggests a pretextual motivation. Second, the jury was presented evidence which showed that far from misusing the compensatory time arrangement, Coston had accumulated in excess of 140 hours of unused compensatory leave time. Moreover, the fact that other employees who misused the telephone system had not been disciplined as severely as Coston could reasonably suggest that this issue was a pretext for his removal.
 
 
 21
 This evidence, developed more fully at trial, provides a substantial basis for the verdict. While we may have interpreted the evidence differently were we the trier of fact, we conclude that a reasonable jury could have found for the plaintiff. We further find that there was sufficient issue of fact for the jury to resolve conflicting inferences from the evidence and for the district court to deny defendants' motion for a directed verdict and JNOV.
 
 
 22
 Finally, defendants argue that Coston is not entitled to relief since he "voluntarily" resigned and thus was not "deprived" of a constitutionally protected interest within the meaning of Sec. 1983. Defendants rely on Stone v. University of Maryland Medical System, 855 F.2d 167 (4th Cir.1988), in which a former professor at a state university medical school brought a Sec. 1983 action against his former employers for violating his due process rights by forcing him to resign. We held that if the professor resigned of his own free will, he relinquished his property interest voluntarily and thus could not establish that the state "deprived" him of it within the meaning of the due process clause. In the case at bar, however, Coston's "resignation," unlike Professor Stone's, was so involuntary that it amounted to a constructive discharge. We find, as we did in Stone, that a public employer obviously cannot avoid its constitutional obligation to provide due process by the simple expedient of forcing "involuntary resignations." Stone, 855 F.2d at 173. The plaintiff in Stone engaged in protracted negotiations concerning the terms and conditions of his resignation. Stone eventually received his regular salary for almost a year after his resignation was requested. No similar substantive negotiations or discussions were entered into by the parties in the case at bar. Although Coston may have appreciated some of the implications of his decision to "resign" rather than face immediate firing, his action was far from "voluntary" in the sense described in Stone. We find no voluntary relinquishment by Coston of his protected interest within the meaning of Sec. 1983.
 
 
 23
 Accordingly, for the reasons stated herein we find that the evidence presented at trial, viewed in the light most favorable to the plaintiff, was sufficient to support the jury's findings with respect to the contested issues, and that the district court's rulings denying defendants' motions for directed verdict and JNOV were correct.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 Coston, it would seem, was in a policymaking position exempt from certain provisions, such as the just cause provision, of the State Personnel Act. N.C.Gen.Stat. Sec. 126-5(d). See Defendants' Exhibit No. 74. However, the defendants do not raise the argument on appeal that since Coston occupied a policymaking position he could be discharged for the political purposes plaintiff alleges. Since this argument is not raised, we do not address it