Elisa **LASOTA**, Plaintiff,

v.

**TOWN OF TOPSFIELD,**
**et al., Defendant.**

**No. CIV.A. 96–10517–NG.**

United States District Court,
D. Massachusetts.

Sept. 15, 1997.

---

**46**

Robert F. Collins, Revere, MA, for Plaintiff.

Leonard H. Kesten, Brody, Hardoon, Perkins & Kesten, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER

GERTNER, District Judge.

### I. INTRODUCTION

Plaintiff Elisa LaSota ("LaSota") served as an untenured elementary school teacher for the Steward School in Topsfield, Massachusetts, during the 1992–93 school year. She was not rehired for the next year. LaSota contends that the defendants' failure to rehire her stemmed from her association with

Robert LaSota, a man with whom she lived and intended to marry. She claims the defendants' decision violated her constitutional rights, protected by 42 U.S.C. § 1983. Whether she was actually married to Robert LaSota or not, Elisa LaSota claims that the First Amendment protects her right to intimate association with him.

The defendants include the town of Topsfield, as well as the following individual defendants: Joseph Connelly, the Superintendent of Topsfield's schools; Robert Milley, his assistant; Thomas Collins, Mary Shannon (now deceased), Thomas Hughes, Alice Sheridan, and Jeanne Kinhan, all members of the Topsfield School Committee; and Maureen Dwan, the Steward School Principal.

The defendants have brought what they term a summary judgment motion. The timing of this motion (pre-discovery) and the fact that it challenges the facial validity of LaSota's legal claim, rather than the sufficiency of the evidence, suggests that it is more properly styled a motion to dismiss. Given these facts, I will treat it as such and apply the standards of Fed.R.Civ.P. 12(b)(6).[1]

For the foregoing reasons, the defendants' motion is **ALLOWED** in part and **DENIED** in part. The motion is **ALLOWED** for the individual defendants in their personal capacities; the motion is **DENIED** for the individual defendants in their official capacities and for the Town of Topsfield itself.

### II. FACTS

In April of 1992, Maureen Dwan ("Dwan"), a second-grade schoolteacher at the Steward School in Topsfield, Massachusetts, suggested that LaSota should apply for a teaching position at the school. Shortly thereafter, Dwan was promoted to Acting Principal of the Steward School for the 1991–92 school year and subsequently to principal for the 1992–93 school year. In July, 1992, LaSota was appointed to teach at the Steward School, taking over Dwan's second-grade

---

1. The current record contains the Complaint, the Answer, the Defendant's Motion for Summary Judgment, the Plaintiff's Opposition, and the Plaintiff's Affidavit regarding her relationship with Robert LaSota. Since the defendants are willing, for the purposes of this motion, to assume that the facts alleged in the plaintiff's complaint are true, I too, will treat LaSota's complaint as true, drawing reasonable inferences in her favor.

class for the upcoming academic year.[2] The school year began on September 9, 1992; LaSota had twenty-two students in her second-grade class. She received a "superlative" official written evaluation from Dwan in November, 1992.

### A. *Mr. LaSota*

In June 1987, LaSota had begun a intimate relationship with Robert LaSota ("Mr. LaSota"); the two decided to live together and contemplated marriage.[3] On December 30, 1994, the couple were married. Throughout the 1992–93 school year, LaSota was known by her maiden name, Elisa Gilmore.[4]

In 1987, an indictment was returned against Mr. LaSota in Massachusetts Superior Court alleging five counts of rape and abuse of his daughter, then a child. He was convicted of these charges in 1988, but in July, 1990, the Massachusetts Appeals Court reversed these judgments and entered partial judgment in Mr. LaSota's favor. In 1993, Mr. LaSota was twice retried for the remaining counts of the 1987 indictment. Each trial ended in a mistrial. Eventually, all charges against Mr. LaSota were dismissed.[5]

### 1. *Service of a Subpoena*

On February 2, 1993, Assistant District Attorney Janice Howe, accompanied by two Massachusetts state troopers, attempted to serve a subpoena on LaSota, through Principal Dwan, on school grounds. The subpoena commanded LaSota to appear at the Superior Court to testify in the action brought by the Commonwealth against Mr. LaSota.[6]

Following this incident, Dwan informed LaSota that Assistant Superintendent Robert Milley ("Milley") was concerned about her relationship with Mr. LaSota. In mid-February, Dwan advised LaSota not to continue to have Mr. LaSota pick her up in the school parking lot.[7]

On March 16, 1993, during a conference with Dwan, LaSota received her first negative teacher's evaluation. Dwan informed LaSota that after consulting with others, she planned to recommend that LaSota's contract not be renewed. On or around March 29, 1993, LaSota received a letter from Superintendent Joseph Connelly ("Connelly"), dated March 22, 1993, which stated "that the Topsfield School Committee, at their March 18, 1993 meeting, did not reappoint you as a grade two teacher at the Steward School for the 1993/1994 school year."

On June 3, 1993, LaSota attended a school committee hearing with her lawyer. While some parents spoke in her favor at this meeting, the Topsfield Elementary School Committee still voted unanimously not to rehire her.[8]

### III. *DISCUSSION*

LaSota has asserted several claims: (1) claims against the individual defendants as individuals; (2) claims against the individual defendants in their official capacities; and (3) claims against the municipality. She bears a

---

2. According to LaSota, Superintendent Joseph Connelly informed her that she was being hired on a tenure track program.

3. The record indicates that LaSota (then Elisa Gilmore) and Mr. LaSota shared responsibility for the care of a child; the child's parentage is not clear from the record. LaSota's complaint states that "In 1987, an Essex County Grand Jury returned an indictment against Robert LaSota alleging five counts of rape and abuse of a child, his daughter" (¶ 20). It also states that at one point, "Dwan asked LaSota whether Robert LaSota had ever 'abused' LaSota or *her* daughter." (¶ 22) (emphasis added).

4. When they did eventually marry, the plaintiff took her husband's name, and became Elisa LaSota.

5. LaSota testified on Mr. LaSota's behalf at all three of his trials. Each time she stated, under oath, her intention to marry Mr. LaSota in the near future, when all the pending charges against him were resolved.

6. LaSota, however, was already at the Lawrence Superior Court, waiting to appear as a witness on behalf of Mr. LaSota.

7. Dwan herself knew of LaSota's intimate relationship with Mr. LaSota; she had visited their home.

8. LaSota's second-grade teaching position was assigned to a long-term substitute teacher who had taught third-grade at the nearby Procter School during the 1992–93 academic year.

different burden of proof with respect to each.

Government officials are generally shielded from liability as individuals by qualified immunity. But an individual acting in his official capacity and the municipality are not protected by qualified immunity.[9] Here, as the discussion below suggests, LaSota's complaint provides a basis for claims against the municipality and against the individual defendants in their official capacities, but not against the individual defendants as individuals.

## A. Qualified Immunity

In the performance of discretionary functions, government officials, as individuals, are "generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). In the First Circuit, qualified immunity analysis involves two prongs:

> First, the court must determine, as a matter of law, whether the constitutional right in question was clearly established at the time of the alleged violation. If the right is clearly established, the court must then ask whether a reasonable similarly situated [state agent] should have understood that the challenged conduct violated that right.

*Soto v. Flores*, 103 F.3d 1056, 1064 (1st Cir. 1997) (citations and internal quotation marks omitted).

In the absence of a clearly established right an official could not reasonably be expected to have known his conduct was illegal. *Id.* If the constitutional right was not clearly established, then the violation of such a right is not a claim upon which relief can be granted.

"Clearly established" has been defined by the Supreme Court in this context to mean:

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]t is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

LaSota's complaint implicates the issue of whether there is a constitutional right to intimate association with a person with whom one shares a home and to whom one intends to be married. That right has not been clearly established in the First Circuit or in any other Circuit.[10] As was the case in *Soto*, a "confusing body of caselaw" surrounds the issue. *Id.* Consequently, the right was not sufficiently clear to support a claim against the individual defendants as individuals.

## B. The Town of Topsfield and its Officials

In contrast to its individual officials, a local government entity does not enjoy the protection of qualified immunity. *See Brandon v. Holt*, 469 U.S. 464, 473, 105 S.Ct. 873, 878–79, 83 L.Ed.2d 878 (1985).[11] A city may be liable even if its officers would not have known that

9. This distinction is often confusing. "The issue is whether the plaintiff seeks damages directly from the individual officer who is named as the defendant in the action, or whether the remedy actually is sought against the government entity that employs the officer." Erwin Chemerinsky, *Federal Jurisdiction* § 8.6 at 453 (2d ed.1994).

10. Other Circuits have discussed this issue. *See, e.g., Thorne v. City of El Segundo*, 802 F.2d 1131, 1139 (9th Cir.1986) ("at the time the events in this case transpired, we conclude that the cases had not delineated the parameters of this right to privacy with sufficient clarity to regard the right as 'clearly established,' and thus defeat the defendants' good faith immunity"); *Vieira v.*

*Presley*, 988 F.2d 850, 852 (8th Cir.1993) ("There is no clearly established law whether or not associations with friends and acquaintances are sufficiently intimate to be entitled to the constitutional protection of freedom of association."); *Cameron v. Seitz*, 38 F.3d 264, 274 (6th Cir. 1994) ("marriage and other 'intimate human relationships' appear to enjoy some degree of constitutional protection," though an "association short of marriage" is *not* "clearly established as a constitutionally-protected one.")

11. Again, a suit against an individual officer in his official capacity is treated as a suit against the municipality. The two are functional equivalents.

their decisions or written policies were unconstitutional.

Municipal liability can attach for injuries caused by a single decision, so long as the decision was made by an official "responsible for establishing final policy with respect to the subject matter in question." *See Pembaur v. Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). The rationale for this rule stems from the municipality's broad powers: "[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or taken repeatedly." *Id.* at 481, 106 S.Ct. at 1299.

The determination of whether an official has final decision-making authority in a particular area is a question of state law. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 709, 109 S.Ct. 2702, 2709, 105 L.Ed.2d 598 (1989). In Massachusetts, the school committees' "powers include the employment . . . of teachers . . ." *Molinari v. City of Boston*, 333 Mass. 394, 394, 130 N.E.2d 925 (1955). While the record is currently undeveloped, it appears likely that as a matter of Massachusetts law, one or more of the defendants had final policymaking authority to decide whether or not to rehire LaSota.

Under *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1299–1301, 89 L.Ed.2d 452 (1986), Topsfield may be liable if one such an official decided not to re-hire LaSota for impermissible reasons. "Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with

respect to the subject matter in question." *Id.* at 483–84, 106 S.Ct. at 1300.

On this rather abbreviated record, and viewed in the light most favorable to the non-moving party, the Town of Topsfield, acting through its officials, could have made a deliberate choice not to rehire LaSota, and one or more of these officials may have had final policymaking authority for this decision.

### 1. *LaSota's Constitutional Right To Intimate Association and Right to Privacy*

■ As I have found, the constitutional right on which LaSota bases her § 1983 claims was *not*, at the time the defendants acted, clearly established. Nonetheless, I find that such a right *does* exist. The plaintiff characterizes the right to intimate association as an expressive one which emanates from the First Amendment. In *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), the Court implicitly located the source of this right in the Fourteenth Amendment, and its guarantee of personal liberty:

> In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty.

*Id.* at 617–18, 104 S.Ct. at 3249.[12] I find that this right may also be characterized as part of the right to privacy established by the Fourteenth Amendment's due process clause.[13]

---

**12.** The Court held that the creation and sustenance of family; raising and educating children; and cohabitation with one's relatives are "entitled to this sort of constitutional protection . . ." *Id.* Intimate associations that "are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship . . ." are precisely the kind of relationships that the Constitution protects. *Id.* at 620, 104 S.Ct. at 3250.

LaSota's relationship with Mr. LaSota reflects all these characteristics. They lived together and raised a child together for several years before

marriage. The absence of legal bonds does not exclude their association from constitutional protection. *Cf. Moore v. City of East Cleveland*, 431 U.S. 494, 504, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531 (1977) ("Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family.").

**13.** *But see Shahar v. Bowers*, 114 F.3d 1097, 1112–13 n. 6 (11th Cir.1997) (Tjoflat, J., concurring) (discussing split among the circuits as to whether the right of intimate association is a First Amendment or substantive due process right); *e.g. IDK, Inc. v. County of Clark*, 836 F.2d

In *Carey v. Population Services Int'l,* the Court described the boundaries of the constitutional right to privacy:

> This right of personal privacy includes the interest in independence in making certain kinds of important decisions. While the outer limits of this aspect of privacy have not been marked by the Court, it is clear that *among the decisions that an individual may make without unjustified governmental interference are personal decisions relating to marriage ...*

431 U.S. 678, 684–85, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977) (internal quotation marks and citations omitted) (emphasis added). LaSota's decision to cohabit with Mr. LaSota, to testify on his behalf, to raise a family with him, to be seen with him in public, and to make her relationship with him known to her superiors, are "decisions relating to marriage." The culmination of these "decisions" in their marriage is relevant, but the real issue is LaSota's right to make that choice free from "unjustified government interference."

Notwithstanding the Supreme Court's general reluctance to expand the substantive due process clause,[14] a right which bears a striking resemblance to previously established rights is still protected by the Constitution. Strong connections tie the right to intimate association to marriage and procreation—both of which are well-established, fundamental rights protected by the Fourteenth Amendment. These claims, moreover, bear no resemblance to less meritorious claims for new substantive due process rights. *See, e.g., FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 237, 110 S.Ct. 596, 610–11, 107 L.Ed.2d 603 (1990) (holding that limiting motel room rentals to 10 hours will not diminish tradi-

tional personal bonds). While privacy rights may be "limited to those which are 'fundamental' or 'implicit in the concept of ordered liberty,'" *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976), they include the right to associate intimately with a person with whom one contemplates marriage, without fear of government interference.

A "fundamental right" leads to and secures other rights. As the Court held in *Griswold v. Connecticut,* 381 U.S. 479, 482–83, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965), "Without those peripheral rights the specific rights would be less secure." Rights deemed essential to protecting recognized fundamental rights thereby become fundamental. *See IDK, Inc. v. County of Clark,* 836 F.2d 1185, 1191 (9th Cir.1988) ("The Constitution protects associations because of their intrinsic value as well as their value as instrumentalities for achieving certain ends ...").

## 2. *LaSota's Rights Under the Fourteenth Amendment*

■ LaSota has a constitutional right to associate intimately without fear that the government will use her associations when making decisions concerning her employment. In *Littlejohn v. Rose,* 768 F.2d 765, 772–73 (6th Cir.1985), the plaintiff was a non-tenured teacher whose contract was not renewed by the superintendent of schools. The court held that the plaintiff's decision to get divorced—a decision "relating to marriage"—was entitled to protection from government interference. As a result, the divorce "constitute[d] an impermissible reason for denying employment." *Id.* at 769–70.

If a decision to divorce relates to marriage, then a decision to live together, raise a child, and plan for marriage must also be consid-

1185, 1192–93 (9th Cir.1988) ("If the activities of escorts and their clients qualify as intimate associations, the escort services may attack the regulation as intruding on the right of privacy. To the extent that the escort services or their employees are involved in expressive association, they may challenge the county's regulation as an impermissible burden on their first amendment rights, as overly broad, and as excessively vague.").

**14.** *See Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 811–12, 127 L.Ed.2d 114 (1994) (not-

ing that the Court is reluctant to expand the concept of substantive due process; "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."); *Bowers v. Hardwick,* 478 U.S. 186, 195, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140 (1986) ("There should be, therefore, great resistance to expand the substantive reach of [the Due Process] Clauses, particularly if it requires redefining the category of rights deemed to be fundamental.").

ered a decision "relating to marriage." The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests." *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). On a motion to dismiss, LaSota has established a colorable claim that Topsfield and its officials may have denied LaSota employment based on her constitutionally protected activities.

Not surprisingly, the defendants argue that extending protection to LaSota's intimate associations will lead courts down a slippery slope. The line between protected activity (i.e. decisions relating to marriage) and unprotected conduct (the right to associate with dancers in a dance hall) may be difficult to draw, in some cases, but not here: the LaSotas lived together; raised a child; planned a wedding; and actually did marry. These characteristics sufficiently distinguish this relationship from more casual ones.

## IV. *CONCLUSION*

The motion for summary judgment with respect to the individual defendants is **ALLOWED**. It is **DENIED** with respect to the Town of Topsfield and the individual defendants in their official capacities. The parties shall report for a status conference in courtroom number four on the twelfth floor at 3:45 p.m., on September 25, 1997.

**SO ORDERED.**