ROGERS, Circuit Judge,
dissenting.
Qualified immunity protects the private funds of an official sued in his individual capacity for actions that have not been clearly established to be unconstitutional, even if the actions are later determined indeed to have been unconstitutional. Even assuming that the termination of a *975 public school teacher for not sending his children to the public schools is unconstitutional,[1] it is not clearly established to be unconstitutional. This is because the legal conclusion results from a balance that has not been definitively made by the Supreme Court, the Sixth Circuit, or even by federal courts in general.
The majority concludes that “any reasonable official would know that denying employment based on a parent’s constitutional right to direct his child’s education is a violation of the law.” And yet, such a right has not been articulated in the Supreme Court or this circuit. Rather, the majority constructs this right from the parts of two others: the fundamental right of a parent to raise his or her children and direct their education, which is clearly established, and a right the majority describes as a right not to be denied government employment because of a decision to exercise a fundamentally protected right. This second “right” is not a right in all contexts, and has certainly not been clearly established in the context presented by this case.
Public employees can be required to give up some of their constitutional rights, although certainly not all of them. The public employer can insist that employees waive certain rights, but cannot insist that employees waive others. It is concededly clearly established that public employers cannot require their employees to vote a certain way, to go to religious services, or to do a number of other things that are unrelated to the public employment. This explains the cases relied upon by the majority, such as Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (public criticism of college’s board of regents), Littlejohn v. Rose, 768 F.2d 765 (6th Cir.1985) (divorce), and Adkins v. Board of Education, 982 F.2d 952 (6th Cir.1993) (marriage to a particular person). On the other hand, public employers can require employees to give up some constitutional rights, such as the right to read the newspaper all day, or the right to proselytize all day, where the restriction is sufficiently related to the purpose of the employment. For instance, in Montgomery v. Carr, 101 F.3d 1117 (6th Cir.1996), a case relied upon by the majority opinion, this court upheld a school district’s anti-nepotism policy, which required the transfer of one employee because that employee was married to another employee, despite the right to marry. And in Flaskamp v. Dearborn Public Schools, 385 F.3d 935 (6th Cir.2004), this court upheld a school board’s decision to deny tenure to a teacher who had a relationship with a student, despite the right to intimate association.
Telling a teacher where his child may go to school may fall somewhere in between. Just the two clearly established propositions, (1) that parents have a right to send their children to nonpublic schools and (2) that public employers cannot make employees give up all their constitutional rights, do not, even together, clearly establish the conclusion (3) that public school employers cannot require teachers to put their own children in the public schools. Conclusion (3) may result from a careful *976 examining and balancing of the interests in (1) with the need of schools to have teachers demonstrate commitment to the public schools, but it cannot be said that such a conclusion is clearly established.
Under the proper test, in order for a right to be considered clearly established, it must be “ ‘so clearly established when the acts were committed that any officer in the defendant’s position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.’ ” Akers v. McGinnis, 352 F.3d 1030, 1042 (6th Cir.2003) (quoting Dominque v. Telb, 831 F.2d 673, 676 (6th Cir.1987)). Or, as this court has said elsewhere, “ ‘[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.’ ” Saylor v. Bd. of Educ., 118 F.3d 507, 515 (6th Cir.1997) (emphasis in original) (quoting Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F.3d 1146, 1150 (11th Cir.1994) (en banc)). On the facts of this case, it is not clear that “every like-situated, reasonable government agent” would have clearly understood that the right to direct the education of one’s children should be combined with a balancing test used to determine what rights a public employer can require a public employee to give up, with the result that a public school can not require a public school teacher to send his or her child to that public school. Accordingly, Superintendent Lucci should be accorded qualified immunity in this case.

. Although, for purposes of this dissent, I assume that Barrett's termination was unconstitutional, this is not necessarily the case. If this court were to apply a test similar to that applied in Montgomery v. Carr, 101 F.3d 1117 (6th Cir.1996), a case addressing an anti-nepotism policy and the right to many, this court could conclude that only rational basis scrutiny was warranted for Barrett’s claim. See id. at 1124-29. And under a rational basis analysis, the government's interest in eliminating the inference that public schools are of lesser quality than private schools, an inference that can be drawn when a public school teacher sends his child to private school, may be sufficient to justify the requirement imposed on Barrett.