MERRITT, Circuit Judge.
This case requires us to draw a line between the administrative and the judicial acts of federal judges. The sole question we address on appeal is whether the doctrine of absolute judicial immunity shields federal judges from any liability for wrongful employment practices.
The District Court dismissed the case on the basis of absolute judicial immunity. In light of our interpretation of the well-settled law that the doctrine of absolute immunity does not extend to the non-judicial acts of judges, we hold that judicial immunity does not apply to the personnel decisions at issue here. We therefore reverse and remand the case to the District Court.
I.
Helen Guercio, the former personal and confidential secretary to Bankruptcy Judge Brody of the Eastern District of Michigan, brought a civil action against Judge Brody and Judge Feikens, Chief Judge of the U.S. District Court for the Eastern District of Michigan, in their’ individual and official capacities for alleged wrongful termination of her employment. Plaintiff seeks compensatory and punitive damages against both judges in their individual capacities for allegedly discharging her in violation of her First Amendment free speech rights. In addition, plaintiff seeks reinstatement to *1116 her former position or a comparable one with back pay and other employment benefits allegedly due.
Defendants moved to dismiss or for summary judgment, and the District Court dismissed plaintiffs amended complaint on the ground that plaintiff’s claims are barred by the doctrine of absolute judicial immunity.
The facts of this case, as alleged in the complaint and affidavits of record, lead us through an unfortunate chapter in the history of the U.S. Bankruptcy Court for the Eastern District of Michigan — a period in which Ms. Guercio asserts that she played a central role in exposing corruption in the Bankruptcy Court.
According to the allegations, Guercio was hired in January 1979 by Judge Brody to serve as his secretary. From October 1979 through June 1981, Guercio made various disclosures concerning corruption in the Bankruptcy Court. She revealed, for example, that the Bankruptcy Court’s system of random case assignments was being manipulated. These disclosures eventually led to the resignation of a bankruptcy judge as well as the criminal convictions of an attorney and bankruptcy court clerk.
As part of this chain of events resulting from her disclosures, Guercio alleges that the Judicial Council of the Sixth Circuit intervened and placed the Bankruptcy Court in virtual receivership. The Judicial Council stated in an order dated May 6, 1981:
The Council concludes that the effective and expeditious administration of the business of the courts within this circuit requires that the administration of the Bankruptcy Court for the Eastern District of Michigan be placed under the supervision of the United States District Court for the Eastern District of Michigan. Such supervision should include the oversight of the general operation of the Bankruptcy Court Clerk’s Office, the appointment of an Acting Clerk of the Bankruptcy Court and the approval of all personnel actions affecting employees of the Bankruptcy Court.
By an order of May 18, 1981, the judges of the U.S. District Court for the Eastern District of Michigan directed Chief Judge Feikens to assume supervisory responsibility for the Bankruptcy Court pursuant to the earlier order of the Judicial Council of the Sixth Circuit.
During the summer of 1981, Guercio circulated articles to the press and others from many years before concerning a lawyer who had recently been nominated to fill the vacancy on the Bankruptcy Court. The articles supposedly disclosed that the nominee had earlier been nominated for the position of U.S. Attorney in 1969 but had withdrawn when it was disclosed that he had represented reputed organized crime figures.
With the approval of Chief Judge Feikens, Judge Brody fired Guercio on October 16, 1981.
II.
The central issue in this case is whether Judges Brody and Feikens were carrying out a judicial act in firing Guercio. The Supreme Court in Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), set forth a two-pronged test for determining whether an act by a judge is a “judicial” one. The first element relates to the “nature of the act itself, i.e., whether it is a function normally performed by a judge.” 435 U.S. at 362, 98 S.Ct. at 1107. The second element concerns the “expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.” Id.
Applying the Stump test, we believe that the actions of Judges Feikens and Brody clearly fall outside a protected judicial act. We follow generally the reasoning of the Seventh Circuit’s recent decision in McMillan v. Svetanoff, 793 F.2d 149 (7th Cir.), cert. denied,—U.S.-, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986), which addressed this issue in the context of a state judge firing a court reporter. In that case the court stated in pertinent part:
Hiring and firing of employees is typically an administrative task. It involves decisions of a personal rather than impartial nature, which is integral to judi *1117 cial decisionmaking. The decision to fire the plaintiff did not involve judicial discretion; in other words, the judge did not utilize his education, training, and experience in the law to decide whether or not to retain plaintiff. The administrative act of firing the plaintiff will not assist the judge in interpreting the law or exercising judicial discretion in the resolution of disputes. Certainly the court reporter assists the judge in his or her judicial capacity, but so does everyone else employed within the judge’s chambers —the secretary, bailiff, law clerk, court reporter, probation officer, clerk of court, janitor — they all assist in the smooth operation of the judicial process.
793 F.2d at 155 (emphasis added). See also Forrester v. White, 792 F.2d at 647, 663 (7th Cir.1986) (Posner, J., dissenting) (“Judges have both judicial and executive functions. Hiring and firing subordinates are executive functions.”)
The crucial mistake in the position adopted by the District Court and argued by defendants is that it conflates official acts of judges into judicial acts and seeks to extend judicial immunity to this broader class of official acts. For the purpose of absolute immunity analysis, this distinction is critical: only judicial acts are cloaked with absolute immunity. See Stump, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Judges may perform many official acts which are not judicial acts. See, e.g., Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) (in promulgating bar code state Supreme Court acted in legislative capacity and not entitled to judicial immunity).
The Supreme Court recognized this fundamental distinction over a century ago in Ex Parte Virginia, 100 U.S. 339 (10 Otto) 25 L.Ed. 676 (1879). This case involved a county judge indicted for racial discrimination in directing the selection of a jury venire for the county’s courts. The judge argued that he could not be prosecuted by performing the judicial act of selecting the venire. The Court rejected the judge’s argument in language in harmony with our present case:
Whether the act done by him was judicial or not is to be determined by its character, and not by the character of the agent. Whether he was a county judge or not is of no importance. The duty of selecting jurors might as well have been committed to a private person as to one holding the office of a judge. It often is given to county commissioners, or supervisors, or assessors. In former times, the selection was made by the sheriff. In such cases, it surely is not a judicial act____ It is merely a ministerial act, as much so as the act of a sheriff holding an execution, in determining upon what piece of property he will make a levy, or the act of a roadmaster in selecting laborers to work upon the roads. That the jurors are selected for a court makes no difference. So are court-criers, tipstaves, sheriffs, & c. Is their election or their appointment a judicial act?
100 U.S. at 348 (emphasis added).
In this case the District Court committed the same kind of error that the Supreme Court describes in Ex Parte Virginia. It confused an administrative or ministerial action with a judicial act. The District Court reasoned that although “the actions of Judge Feikens and Judge Brody were not actions that were taken in the courtroom under the normal advocacy proceedings ... we believe that the actions of the Judges, whether correct or not, were done within their capacities as Judge of the United States District Court and Judge of the United States Bankruptcy Court for this district.” Joint Appendix at 38.
The government argues that Judges Brody and Feikens were performing judicial acts in firing Guercio. It is argued on Judge Feikens’ behalf that since Judge Feikens was acting pursuant to an order of the Judicial Council of the Sixth Circuit in approving the firing of Guercio, “Judge Feikens was performing an act by virtue of his judicial capacity.” Brief for Appellees at 19. It is also contended that “Judge Brody approached Chief Judge Feikens *1118 with the expectation that the latter, as court-ordered receiver of the Bankruptcy Court, would review this matter.” Id. Defendant argues that in the case of Judge Feikens the conjunction of these two factors satisfies the test under Stump.
With respect to Judge Brody, defendants highlight various facts as the basis of immunity: (1) Guercio was hired by Judge Brody pursuant to 28 U.S.C. § 156(a) (1982) which gives a bankruptcy court judge the authority to employ a secretary; (2) as Judge Brody’s confidential secretary, Guercio acted as Judge Brody’s “alter ego”; and (3) Judge Brody “severed this confidential relationship with Ms. Guercio in order to improve both his and the Bankruptcy Court’s ability to function more effectively and harmoniously.” Brief for Appellees at 18-19.
Under these arguments, we see no principled limit to defendants’ request for immunity. Under the standard urged by defendants, the doctrine of judicial immunity would sweep far too broadly to cover with absolute immunity the actions of the judicial councils of the federal courts of appeals — despite the fact that those councils plainly have authority over the “nonjudicial activities of the courts of appeals.” 28 U.S.C. § 332(e)(1) (1982). Moreover, the doctrine as argued by defendants would also cover hiring and firing decisions of federal judges even though these are administrative decisions.
Other courts, in addition to the Seventh Circuit in McMillan v. Svetanoff, 793 F.2d 149 (7th Cir.), cert. denied,—U.S.-, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986), have agreed that decisions by judges in the personnel context are not judicial acts. See, e.g., Richardson v. Koshiba, 693 F.2d 911, 914 (9th Cir.1982) (screening decisions by judicial selection panel comprised of judges involve “executive” acts); Lewis v. Blackburn, 555 F.Supp. 713, 723 (W.D.N.C.1983) (judge’s appointment of magistrates ministerial act), rev’d on other grounds, 759 F.2d 1171 (4th Cir.), cert. denied,—U.S.-, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985); Goodwin v. Circuit Court, 729 F.2d 541, 549 (8th Cir.1984) (county judge’s decision to transfer hearing officer not “official judicial act” but rather “administrative personnel decision”); Clark v. Campbell, 514 F.Supp. 1300, 1302 (W.D.Ark.1981) (county judge, in hiring or firing county employees, exercises administrative and ministerial, not judicial, function). But see Forrester v. White, 792 F.2d 647 (7th Cir.1986) (state judge’s alleged wrongful discharge of probation officer entitled to absolute immunity).
This Court has been reluctant to extend the doctrine of judicial immunity to contexts in which judicial decisionmaking is not directly involved. In Lynch v. Johnson, 420 F.2d 818 (6th Cir.1970), a member of a county “fiscal court” sued a county judge, who was serving ex officio as the presiding officer, for forcibly removing him from a meeting and jailing him. The Court concluded that the “fiscal court” was not an “ordinary judicial tribunal” and instead could best be characterized as a body through which the “affairs of the county are managed” with powers that are “legislative and administrative” in nature. 420 F.2d at 820. In light of the functions of the “fiscal court,” the Court held that the defendant judge was not performing a judicial act during the meeting at issue and was therefore not entitled to the defense of judicial immunity.
In King v. Love, 766 F.2d 962 (6th Cir.), cert. denied,— U.S.-, 106 S.Ct. 351, 88 L.Ed.2d 320 (1985), an individual who was mistakenly charged with driving while intoxicated brought a civil action against a city court judge after he was jailed for contempt, and then allegedly through the judge’s actions, arrested again. The complaint alleged, first, unlawful incarceration by the judge, and, second, illegal arrest by the judge and police officers. The Court held that the incarceration claim was barred by judicial immunity. The Court explained, “Since the Memphis City Court had subject matter jurisdiction over the driving while intoxicated charge against King and since incarcerating King for contempt of court was a judicial act, King may not sue Judge Love for damages stemming from the March 4,1980 incident.” 766 F.2d at 968. The Court held, however, that the *1119 illegal arrest claim was not barred by judicial inmunity since on the facts of the case it was not a judicial act.
The Court stated that “the act of deliberately misleading officers who are to execute a warrant about the identity of the person sought well after the warrant has been issued” is not a judicial act. Id. See also Sevier v. Turner, 742 F.2d 262, 272 (6th Cir.1984) (county juvenile court judge’s acts initiating criminal prosecution and civil contempt proceeding against father in arrears on child support payments “nonjudicial acts” and judge therefore not immune).
We conclude that a proper application of the Stump test requires that the firing of Guercio be deemed a nonjudicial act. The firing of a confidential and personal secretary is hardly the “type of act normally performed only by judges.” Stump, 435 U.S. at 362, 98 S.Ct. at 1108 (emphasis added). Members of the judicial, legislative, and executive branches routinely engage in the task of hiring and firing confidential personnel. This is an administrative act common to all branches of government and the private sector, not “the type of act normally performed only by judges.” Furthermore, the expectations of the parties in this case are that personnel/administrative matters are involved, not judicial acts.
The basic problem with defendants’ standard extending immunity to Judges Brody and Feikens for firing Guercio is that it would not serve a central underlying purpose of judicial immunity: promoting fearless and independent decision-making by the judiciary. This rationale for judicial immunity was firmly established at the common law.[1] An early seventeenth century opinion
laid down [the principle] that the judges of the realm could not be drawn in question for any supposed corruption impeaching the verity of their records, except before the king himself, and it was observed that if they were required to answer otherwise, it would “tend to the scandal and subversion of all justice, and those who are the most sincere, would not be free from continual calumniations.”
Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347-48, 20 L.Ed. 646 (1872) (quoting Floyd v. Barker, 77 Eng.Rep. 1305 (1607)).
An 1868 opinion by one of the judges of the Court of Exchequer succinctly stated the purpose of judicial immunity:
“It is essential in all courts that the judges who are appointed to administer the law should be permitted to administer it under the protection of the law, independently and freely, without favor and without fear. This provision of the law is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences. ”
Bradley v. Fisher, 80 U.S. (13 Wall.) at 350 n. (quoting Scott v. Stansfield, 3 L.R.Ex. 220 (1868) (emphasis in original)).
The Supreme Court, which established the doctrine of judicial immunity in Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872),[2] has repeatedly underlined its importance as a safeguard for judicial decisionmaking.[3] In Pierson v. *1120 Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967), which held that the doctrine retained its force in Section 1983 suits, the Supreme Court stated:
It is a judge’s duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation, (emphasis added.)
This case does not implicate this central underlying purpose of the doctrine of judicial immunity. The integrity and independence of judicial decisionmaking is in no way impaired if judges are called to account for their personal decisions. Liability for wrongful personnel decisions would not have a chilling effect on the judicial decisionmaking process. Although a judge may exercise discretion and judgment in firing a secretary, it is not the kind of discretion directly connected to independent decisionmaking in the adjudication process which is a paramount concern of the judicial immunity doctrine.[4]
By limiting the application of the doctrine of absolute judicial immunity in this case, we are giving effect to the principle affirmed by the Supreme Court in Butz v. Economou, 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978):
Our system of jurisprudence rests on the assumption that all individuals, whatever their position in government, are subject to federal law:
“No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it.”
(citing United States v. Lee, 106 U.S. 196, 220, 1 S.Ct. 240, 261, 27 L.Ed. 171 (1882)).

Conclusion

Accordingly, we reverse the judgment of the District Court based on the doctrine of absolute judicial immunity and remand the case for further proceedings. We intimate no view regarding the First Amendment balancing issue calling for consideration of Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), or the doctrine of qualified immunity because those issues were not addressed by the District Court and the record is not now adequate to address them on appeal.

. For an extensive discussion of the common law origins of the doctrine, see Pulliam v. Allen, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).

. The Supreme Court in Bradley held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.” 80 U.S. (13 Wall.) at 351.

. See, e.g., Butz v. Economou, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978) (“Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.”); Dennis v. Sparks, 449 U.S. 24, 31, 101 S.Ct. 183, 188, 66 L.Ed.2d 185 (1980) (judicial immunity arose to permit judges to decide cases "without fear of being mulcted for damages should an unsatisfied litigant be able to convince another tribunal that the judge acted not only mistakenly but with malice and corruption"); and Ferri v. Ackerman, 444 U.S. 193, 203-04, 100 S.Ct. 402, 408-09, 62 L.Ed.2d 355 (1979) (immunity helps “forestall an atmosphere of intimidation that would conflict with *1120 their resolve to perform their designated functions in a principled fashion").

. For a useful discussion of the underpinnings of the doctrine and citations of related cases, see Note, What Constitutes A Judicial Act for Purposes of Judicial Immunity?, 53 Fordham L.Rev. 1503 (1985).