68 F.3d 474
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Norman C. HADAD, Plaintiff-Appellee,
v.
Alvin T. CROUCHER, et al., Defendants-Appellants.
 No. 94-3476.
 United States Court of Appeals, Sixth Circuit.
 Oct. 11, 1995.
 
 Before: MARTIN, SUHRHEINRICH,* Circuit Judges, and CHURCHILL,** District Judge.
 PER CURIAM.
 
 
 1
 On May 23, 1986, Alvin T. Croucher, then Mayor of the Village of Moreland Hills, Ohio, terminated the employment of Village police officer Norman C. Hadad. Hadad appealed the Mayor's decision to the Village Council. The Village Council held a hearing on June 10 and 11, 1986, and then passed an ordinance affirming the Mayor's decision. Hadad filed an appeal of the Village Council's decision to an Ohio common pleas court, but later voluntarily dismissed his state court case on October 17, 1986.
 
 
 2
 Claiming that he was terminated from his employment in retaliation for exercising his First Amendment rights, on May 18, 1987, Hadad filed a 42 U.S.C. Sec. 1983 action against the Village of Moreland Hills, Mayor Croucher, Charles M. Clark (the former Chief of Police of Moreland Hills), and the six members of the Village Council in their individual and official capacities. On June 23, 1987, the defendants filed a motion to dismiss. Relevant to this appeal, the defendant Village Council members argued that they enjoyed absolute immunity from suit because they were acting in a "quasi-judicial" capacity when they unanimously passed the ordinance affirming Hadad's termination. On November 8, 1988, the district court "overruled at this time" the Village Council members's motion to dismiss on absolute immunity grounds. The defendant Village Council members then filed a motion for reconsideration on February 9, 1989. The motion was transferred to Magistrate Gallas, with consent of the parties, for final disposition. Over five years later, on March 22, 1994, Magistrate Gallas denied the motion for reconsideration on the ground that the Village Council members were not performing a quasi-judicial function in affirming the termination of an employee, and therefore were not entitled to absolute immunity. This timely appeal followed. Kennedy v. City of Cleveland, 797 F.2d 297, 298-99 (6th Cir.1986) (stating that interlocutory orders denying a claim of absolute immunity are immediately appealable), cert. denied, 479 U.S. 1103 (1987).
 
 
 3
 This appeal requires us to decide whether the individual Village Council members enjoy absolute immunity from suit for what they claim was a "quasi-judicial" action in passing an ordinance approving the Mayor's decision to discharge Hadad. We agree with the magistrate that the Village Council members performed an administrative--not a judicial--act in approving Hadad's discharge, and therefore do not enjoy absolute immunity. Guercio v. Brody, 814 F.2d 1115, 1119 (6th Cir.1987), cert. denied, 484 U.S. 1025 (1988) (holding that the doctrine of absolute immunity does not extend to the non-judicial acts of judges; federal judges do not enjoy absolute judicial immunity for the administrative act of firing an employee). The Village Council members have not carried their burden to show that absolute immunity is justified under these circumstances. Burns v. Reed, 500 U.S. 478, 486 (1991) (citing Forrester v. White, 484 U.S. 219, 224 (1988)).
 
 
 4
 The Village Council members base their claim to absolute immunity on the fact that the June 10 and 11, 1986, hearings had the trappings of "judicial" hearing: They argue that Hadad was represented by counsel; Hadad cross-examined the Mayor's witnesses; he introduced testimony and exhibits; a stenographer transcribed the hearing; and, there was opening and closing argument. The Village Council members mistakenly believe that the "quasi-judicial" manner in which they conducted the hearing transformed the employment decision they made into a judicial act. For purposes of argument only, we will assume that the Village Council conducted a "judicial hearing" to review the Mayor's termination decision.
 
 
 5
 The Supreme Court has established a functional test for determining whether an act is "judicial," therefore entitling the decisionmaker to absolute immunity. Stump v. Sparkman, 435 U.S. 349 (1978); see also Burns, 500 U.S. at 486 (citing several Supreme Court cases adopting the functional approach); Forrester, 484 U.S. at 224 (stating that "under the functional approach, we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions."). The Stump test requires us to determine 1) whether the act or function is one normally performed by a judge, and 2) the expectations of the parties, i.e., whether the parties dealt with the judge in her judicial capacity. Id. at 362. We applied the Stump test in Guercio, a case involving two federal judges who had participated in the firing of a confidential secretary. We determined that the firing of a confidential secretary was not the "type of act normally performed only by judges." Guercio, 814 F.2d at 1119 (citing Stump, 435 U.S. at 362). Furthermore, we decided that the hiring and firing of personnel was not a uniquely judicial act, but an act common to other branches of government as well as the private sector. Id. Finally, we stated that absolute immunity for employment decisions would not further the purpose of judicial immunity: to promote "fearless and independent decisionmaking by the judiciary." Id. (emphasis added).
 
 
 6
 In this case, the "hearing" the Village Council conducted was for the purpose of determining the propriety of the termination of a Village employee. This was an administrative act both under the case law of this Circuit and by the terms of Article IV Section 5 of the Village Charter. See Guercio, 814 F.2d at 1119; Village of Moreland Hills Charter, Art. IV, s. 5 (stating that the Mayor has the power "to suspend, transfer, reduce in rank, and or discharge from employment any employee or officer; the discharged person has an appeal as of right to the legislative authority of the Village). In addition, the Village Council has not shown that the parties expected to deal with a judicial decisionmaker. This Court has said that "the paradigmatic judicial act is the resolution of a dispute between parties who have invoked the jurisdiction of the court." Cameron v. Seitz, 38 F.2d 264, 271 (1994) (citing Morrison v. Lipscomb, 877 F.2d 463, 465 (6th Cir.1989)). The parties here have not invoked the jurisdiction of a "court" of the state of Ohio, but that of the Village Council, a legislative body. The Village Council members are not judges elected pursuant to Ohio constitutional or statutory law, OHIO CONST. art. IV, Sec. 6; Ohio Rev.Code Ann. Secs. 1901.07-.08 (providing for election of municipal judges), Sec. 1907.11 (county judges), or Sec. 2310.02 (common pleas judges), and are not required to engage in impartial and principled decisionmaking. Here, Mayor Croucher actually acted as both "prosecutor" and participated as decisionmaker. The Mayor presented his case and witnesses against Hadad. Afterwards, the Village Council passed Ordinance No. 1986-60 approving the Mayor's discharge decision. The Mayor then signed the ordinance adopting it. J.A. at 538. In making its determination, Article IV, s. 5[1] of the Village Charter does not require the Council to apply a particular standard of review to the Mayor's decision. In addition, the ordinance, while containing "Findings of Fact" and "Conclusions of Law," actually contains a series of seven conclusory paragraphs, each one taken practically verbatim from the Mayor's discharge letter to Hadad and each one failing to specifically identify either the acts Hadad performed, the rule or law he violated, or the precise source of authority underpinning the Village Council's conclusions of "law."[2]
 
 
 7
 Judicial immunity "is justified and defined by the functions it protects and serves, not by the person[s] to whom it attaches." Forrester, 484 U.S. at 227. In approving Hadad's termination, the Village Council was not engaged in a judicial act pursuant to the Stump test. Both the Supreme Court and this Circuit have refused to extend absolute immunity to judges who make hiring and firing decisions, and we decline to extend this type of immunity to members of a legislative body making the same type of administrative decision. Judgment AFFIRMED.
 
 
 
 *
 Judge Suhrheinrich did not participate in oral argument but paricipated in the decision after hearing tapes of oral argument
 
 
 **
 The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Art. IV, s. 5 of the Village Charter provides in pertinent part:
 The Mayor shall have the power to discipline, suspend, transfer, reduce in rank, and/or discharge from employment any officer or employee of the Municipality for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given them by the proper authority, or for any other reasonable or just cause.
 All suspensions, reduction in rank, or removal from the department may be appealed to the legislative authority of the Village within ten days from the date of the Mayor's judgment. The legislative authority shall hear the appeal not later than its next regularly scheduled meeting. The person against whom the judgment had been rendered may appear in person and by counsel at the hearing, examine all witnesses, and answer all charges against him.
 
 
 [2]
 J.A. at 539-540. The Village Council's conclusions of law are replete with examples of unprincipled decisionmaking. Findings # 1 and # 2 contain the language "Norman Hadad improperly requested [information from the LEADS computer] ... which was not related to a legitimate criminal justice purpose " (emphasis added). The Council does not state what a legitimate criminal justice purpose is or their source of legal authority for making such a determination. In Finding # 4, Hadad is alleged to have "intimidated and harassed members of the public" and to have "misused and abused" his position as a police officer in furtherance of his debt collection business. These are conclusory statements and do not tell Hadad how, when and whom he harassed or intimidated and how this was a misuse of his position. Finding # 6 states that Hadad engaged in the unauthorized practice of law by filing pleadings in a municipal court on another's behalf, but does not cite any legal authority for the conclusion that he engaged in the unauthorized practice of law. Findings # 3, # 5 and # 7 similarly do not cite specific rules, regulations or laws that Hadad is accused of violating